442 A.2d 287

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Owen X. BAGLEY.**

Superior Court of Pennsylvania.

Argued June 1, 1981.

Filed Feb. 26, 1982.

44

Rex R. Gary, Assistant District Attorney, Media, for Commonwealth, appellant.

Roy H. Davis, Public Defender, Media, for appellee.

Before McEWEN, MONTEMURO and SHERTZ, JJ.

McEWEN, Judge:

The Commonwealth brings this appeal from an Order of the Court of Common Pleas of Delaware County granting the motion of appellee in arrest of judgment on the charge of possession with intent to deliver a controlled substance,[1]

1. Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, No. 64 § 13(a)(30) as amended, 35 P.S. § 780–113(a)(30) (Supp.1981–82).

after a jury trial in which appellee, Owen X. Bagley, was convicted of both that charge and an accompanying charge of possession of a controlled substance.[2] In viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the following facts were established. On January 26, 1979, a search and seizure warrant was issued for a 1974 black and silver Cadillac automobile owned by the appellee, Owen X. Bagley, and itemized heroin, methamphetamine, any substance used for cutting drugs and any items used to weigh, package, administer or measure controlled substances as the contraband to be seized. On that same day Chester City Police Officers Thomas Fennell and John Gretsky observed the vehicle specified in the search warrant as it passed their vehicle, followed it, and saw the driver of the Cadillac gradually decrease the speed of the car, open the driver's window and toss a small white package about the size of a pack of cigarettes to the side of the road and then accelerate rapidly. Officer Fennell stopped briefly to locate the discarded package on the side of the road, resumed pursuit, and quickly caught up to the vehicle. Officer Gretsky ordered the driver to pull to the side of the road. The driver of the vehicle, the appellee, was placed under arrest at the scene on an outstanding arrest warrant based upon a domestic complaint that had been lodged against him by his wife. Bagley was further informed by Officer Gretsky that they had a search warrant for his automobile and gave it to him. An immediate search of the person of appellee, his automobile and his male companion, Sammy Davis, at the scene of arrest revealed no contraband. While other Chester City Police Officers took appellee and the three other occupants of the vehicle, as well as the vehicle, to the police station, Officers Fennell and Gretsky returned to the area where they had observed appellee toss the white object from the car and there found a white box which contained eleven glassine bags or envelopes bound together with a rubber band. Each glassine bag contained a white powder. A field test conducted by Officer Gretsky indicated the presence of opiates.

2.  *Id.* at § 13(a)(16), 35 P.S. § 780–113(a)(16).

At the police station, a further search of appellee and his automobile, as well as a search of the persons of his three companions revealed no contraband. Appellee was subsequently placed under arrest on the charges of possession of a controlled substance and of possession with the intent to deliver a controlled substance. Chemical analysis of the powder revealed it to be a substance containing heroin, quinine, caffeine and mannitol. The total weight of the powder was 15.3 grams and the purity of the heroin in the bags ranged from four percent to eighteen percent.

A preliminary hearing was held on February 23, 1979 and appellee was held for court on both charges. A petition to suppress the package of eleven glassine bags containing the heroin was dismissed. A trial, held before the Honorable John V. Diggins on June 20 and 21, 1979, was concluded by declaration of a mistrial after the jury was unable to agree upon a verdict. A motion to discharge the indictments, based upon a claim that the jury was deadlocked by reason of insufficient evidence, was denied by Judge Diggins and no appeal was taken from this order. After a trial which was commenced on November 7, 1979 before the Honorable Robert A. Wright, appellee was found guilty by a jury on the charges of possession of a controlled substance and of possession with intent to deliver a controlled substance.

After argument upon post-trial motions, Judge Wright, by order of December 3, 1980, granted the motion of defendant in arrest of judgment on the charge of possession with intent to deliver a controlled substance and discharged the defendant on that count. All other motions of this defendant were denied. The imposition of sentence was continued pending this appeal by the Commonwealth.

The sole contention of the Commonwealth on appeal is that the trial court erred when it granted the motion of defendant to arrest judgment on the charge of possession of a controlled substance with intent to deliver. The Commonwealth argues that the evidence presented at trial with regard to the quantity of the heroin seized, its street value, its relative purity, the manner of its packaging, as well as

the fact that this controlled substance was in the physical possession of the appellee, was sufficient to permit the jury to render a verdict of guilty against the appellee on the charge of possession with intent to deliver a controlled substance. We disagree with this contention. Our review of the record and examination of the relevant case law does not permit us to conclude that the trial judge erred and, therefore, we affirm.

The established test for reviewing the propriety of a motion in arrest of judgment was restated by this Court in *Commonwealth v. Barnes*, 237 Pa.Super. 407, 352 A.2d 107 (1975):

> [T]he sufficiency of the evidence must be evaluated upon the *entire trial record*. All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove. (Citations omitted). Also, in passing upon such a motion, all evidence actually received must be considered, whether the trial rulings thereon are right or wrong." *Commonwealth v. Terenda*, 433 Pa. 519, 523, 252 A.2d 635, 637 (1969) quoting from *Commonwealth v. Tabb*, 417 Pa. 13, 16, 207 A.2d 884, 886 (1965) (Emphasis in original).

*Id.*, 237 Pa.Super. at 410, 352 A.2d at 109.

In order for a trial court to properly grant the motion of a criminal defendant to arrest judgment on the basis of insufficient evidence, it must determine, after accepting all of the evidence it chooses to believe and all reasonable inferences therefrom, upon which the verdict could properly have been based, that such evidence and such inferences would, nonetheless, be insufficient as a matter of law to find the defendant guilty of the crime charged beyond a reasonable doubt. *Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d 1266 (1977); *Commonwealth v. Blevins*, 453 Pa. 481, 309 A.2d 421 (1973).

The Commonwealth cites a number of decisions from our Pennsylvania Courts to support its contention that the evi-

dence presented at trial was sufficient to allow a jury to properly draw the inference that appellee, the possessor of the heroin, had the requisite intent to deliver to support a conviction of possession with intent to deliver a controlled substance. *See Commonwealth v. Santiago*, 462 Pa. 216, 340 A.2d 440 (1975); *Commonwealth v. Smith*, 250 Pa.Super.Ct. 460, 378 A.2d 1239 (1979); *Commonwealth v. Hill*, 236 Pa.Super.Ct. 572, 346 A.2d 314 (1975), *affirmed in part, vacated in part*, 481 Pa. 37, 391 A.2d 1303 (1978); *Commonwealth v. Wright*, 234 Pa.Super.Ct. 83, 340 A.2d 544 (1975); *Commonwealth v. Wallace*, 265 Pa.Super.Ct. 91, 401 A.2d 816 (1979); *Commonwealth v. Sojourner*, 268 Pa.Super.Ct. 472, 408 A.2d 1100 (1978); *Commonwealth v. Harris*, 241 Pa.Super.Ct. 7, 359 A.2d 407 (1976); *Commonwealth v. Brown*, 232 Pa.Super.Ct. 463, 335 A.2d 782 (1975). We concur with the trial court that each of the cited cases is readily distinguishable from the instant case.

In *Commonwealth v. Santiago, supra,* the Pennsylvania Supreme Court, adopting the reasoning of the Tenth Circuit Court of Appeals in *United States v. King*, 485 F.2d 353 (10th Cir. 1973), concluded that mere possession of a sufficient quantity of a controlled substance is a circumstance from which the trier of fact may infer that the possessor had the intent to sell, deliver or otherwise distribute. In *Santiago*, however, appellants were found to be in possession of a large quantity of heroin with a street value of approximately $250,000 in addition to a quantity of empty glassine bags, rubber bands, razor blades and other assorted drug trafficking paraphernalia. In that case, the police search yielded a bundle of twenty-five packets of heroin, seventeen other similar bundles and two pouches containing together approximately one half pound of heroin. *Id.,* 462 Pa. at 223, 340 A.2d at 442. Among the factors there considered by the Supreme Court in determining whether the evidence warranted the inference of possession with intent to deliver were the quantity of the drugs, their street value, the manner of packaging and the presence of paraphernalia used in drug trafficking. *Id.,* 462 Pa. at 223, 340 A.2d at

444. The extent of the physical evidence seized in this case was a small box in which eleven glassine packets containing a white powder were found. Chemical analysis established the contents of the packets to be adulterated heroin with a total weight of 15.3 grams.

In *Commonwealth v. Smith, supra,* we indicated that such large quantities of a controlled substance, namely, heroin, need not be shown in order to permit the fact finder to infer that the heroin was possessed with intent to deliver. There, police seized sixty-seven glassine bags of heroin, a plastic bag of uncut heroin and an open foil of heroin with a combined street value of approximately $3,000. Police found, in addition, drug paraphernalia suitable to the preparation of heroin for street sale. Further, some $575 in bills of large denomination were found under a mattress in the bed on which the girlfriend of appellant was sleeping. Appellant, himself, was injecting the drug into his arm at the time the police entered the house and was situated approximately two or three feet from the table on which the contraband was located. These circumstances were held sufficient to allow the inference that appellant possessed the heroin with the intention of using it for other than personal needs. Again, this case involves only eleven packets of the heroin substance which had a net weight of 15.3 grams. The police search of appellee, his companions and the Cadillac revealed no other drug paraphernalia, cutting implements, substances or dilutants, nor was any more heroin discovered. Indeed, there was no other evidence that appellee had delivered any heroin or intended to deliver the quantities of heroin seized prior to his arrest.

The reliance of the Commonwealth upon *Commonwealth v. Hill,* 236 Pa.Super.Ct. 572, 346 A.2d 314 (1975), *affirmed in part, vacated in part,* 481 Pa. 37, 391 A.2d 1303 (1978) is misplaced. We find *Hill* to be inapposite to the instant case.

Nor are we pursuaded by the citation of appellant to *Commonwealth v. Wright, supra* (Spaeth, Hoffman, JJ., dissenting). In *Wright,* the arresting police officer stopped the vehicle of the defendant because he was driving too

slowly and was interfering with the flow of traffic. When the defendant was unable to produce a registration card, the police officer requested permission to check the vehicle serial number on the door jamb against his list of stolen vehicles and, while doing so, noticed in plain view on the floor of the car, a number of glassine packets containing a white powder which were bound together with a rubber band. Suspecting their contents to be heroin, the officer arrested the defendant. *Id.*, 234 Pa.Super.Ct. at 85, 86, 339 A.2d at 105. Subsequent chemical analysis of the twenty-five packets in the bundle established their contents to be a mixture of heroin and quinine, each packet weighing between 1.3 grains and 1.9 grains with the composite weight of the bundle being approximately two grams. *Id.*, 234 Pa.Super.Ct. at 90, 92, 339 A.2d at 107, 108. Expert testimony was presented in *Wright* to establish that the appellant was neither a heroin addict nor a narcotic user, which evidence provided substantial support for the inference that the heroin was possessed with the intent to deliver.

The instant case is clearly distinguishable from the *Wright* case in that the Commonwealth here introduced into evidence only eleven packets (albeit each of greater weight), less than half of the number of packages of heroin submitted in *Wright*, and failed to produce any evidence as to whether the appellee was an addict or a user of heroin. Expert opinion testimony elicited to determine whether the quantity of heroin seized from a defendant was consistent with possession for personal use or with sale or distribution has been admitted in a number of cases to support the inference that the controlled substance was possessed with the intent to deliver or distribute. *See, e.g., Commonwealth v. Wallace*, 265 Pa.Super.Ct. 91, 401 A.2d 816 (1979); *Commonwealth v. Sojourner*, 268 Pa.Super.Ct. 472, 408 A.2d 1100 (1978), *affirmed on rehearing, modified on other grounds*, 268 Pa.Super.Ct. 488, 408 A.2d 1108 (1979); *Commonwealth v. Harris*, 241 Pa.Super.Ct. 7, 359 A.2d 407 (1976); *Commonwealth v. Brown*, 232 Pa.Super.Ct. 463, 335 A.2d 782 (1975). Not only did the Commonwealth fail to produce any evi-

dence at trial to indicate whether appellee was a heroin user or addict, it neglected to present any evidence to establish whether possession of eleven bags of heroin containing in all 15.3 grams would be a quantity consistent with the personal needs of an addict or a user over some certain span of time or, whether possession of eleven bags would be more consistent with delivery for sale on the street rather than with its retention for personal use. *Compare Commonwealth v. Sojourner, supra,* 268 Pa.Super.Ct. at 477, 408 A.2d at 1102 (the expert testimony of a police officer experienced as an undercover narcotics agent that a person who had fifty bags of heroin more than likely had them for sale was sufficient to permit the jury to infer intent to deliver); and *Commonwealth v. Brown, supra,* 232 Pa.Super.Ct. at 466, 335 A.2d at 784 (where appellant possessed three bundles of glassine packets and the bundles contained 25, 25, and 21 packets respectively for a total of seventy-one packets, and an experienced police narcotics agent testified that street vendors of heroin frequently package their product in bundles of twenty-five glassine envelopes, such evidence was sufficient to support the inference that the possessor intended to distribute the drugs rather than retain them for personal use).

We acknowledge that in *Brown, supra,* we stated that even without the expert testimony it was reasonable for the lower court to conclude there that the possession by an individual of such a large quantity of packets of heroin supported the inference that the possessor intended to distribute the drugs rather than retain them for personal use. The instant case, however, involves far fewer packages of heroin and we believe that, absent additional expert opinion evidence such as that presented in the foregoing cases, the quantity of heroin seized in this case, despite the manner of its packaging, does not clearly support an inference of possession with intent to deliver.

Our decision in *Commonwealth v. Wallace,* 265 Pa.Super.Ct. 91, 401 A.2d 816 (1979) provides us with additional support for the position we here express. There, the appel-

lant appealed from his conviction on the charge of possession with intent to deliver a controlled substance (heroin) arguing that the evidence presented at trial did not establish that he was a seller of the heroin. In that case, police set up a surveillance of appellant in the Pittsburgh Hill District on the basis of a tip received from a reliable informant, observed appellant on the street for thirty-five minutes, during which time he paced back and forth within a one block radius, and saw him on two occasions being approached by two different males, both of whom exchanged articles with him. After the second exchange, the appellant was arrested. A search incident to arrest produced a plastic bag containing fourteen foil packets of white powder. Chemical analysis revealed each packet to contain a half-spoon measure (five grams) of a substance containing heroin. The expert testimony of an officer who had several years of experience in the narcotics division of the Pittsburgh Police Department indicated that the quantity of heroin found on the person of the appellant was large enough to indicate that he was in the business of selling heroin rather than retaining it for his own personal use. The within case differs from *Wallace* in at least three substantial ways. First of all, the Commonwealth was unable to produce such expert testimony. Secondly, a far greater quantity of heroin was involved in *Wallace* than in this case. And, finally, the activity of the defendant just prior to his arrest supported the inference that he possessed the heroin with the intent to deliver a controlled substance. Here, although the Commonwealth exerted a determined effort to qualify the officers who arrested Bagley as experts in the field of narcotics, it did not succeed. Nor was it successful in establishing whether or not the glassine bags seized were the type normally used for the sale of heroin on the street in Chester. What the Commonwealth did establish was that the measure of heroin found in each of the eleven glassine bags was a "New York quarter" which has a value of about $50 and weighs approximately 1.4 grams. This evidence without more was not sufficient to permit a jury to infer that the appellant possessed the heroin with the intent to

deliver. The circumstances presented in this case are just as consistent with personal use as with delivery or sale.

The Commonwealth also presented evidence that the relative purity of the contents of the eleven bags of heroin ranged between four percent and eighteen percent and it argues, *inter alia*, that the unusually high percentage of heroin found in at least one of these bags supports the inference that Bagley possessed the heroin with intent to deliver. In *Commonwealth v. Harris, supra* 241 Pa.Super.Ct. at 15, 359 A.2d at 411, Judge Hoffman stated, in his dissenting opinion in which Judge Spaeth joined, that the relative purity of seized heroin samples is a factor which may be considered in determining whether the heroin was possessed with intent to deliver. The higher the purity of the heroin seized, the reasoning goes, the more likely that the possessor is a trafficker, since heroin users rarely receive uncut heroin. *Id.* The Commonwealth in this case failed, however, to establish how many of the bags contained heroin of higher purity than the average packet sold on the street in Chester which the evidence indicated was approximately four percent. Absent evidence as to the number of bags of higher purity, the inference that the heroin was possessed with the intent to deliver is conjecture, since the possibility remains that the variance of the purity in one or another of the bags was an aberration of the heroin cutting process.

We believe that the trial court did not err when it granted the motion of appellant in arrest of judgment on the charge of possession with the intent to deliver a controlled substance for the reason that the evidence presented at trial was not sufficient to permit the jury to infer that the appellee, Owen X. Bagley, had the requisite intent to deliver the heroin he had discarded on the roadside.

Order affirmed.

SHERTZ, J., did not participate in the consideration of this case.